IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:21-cv-21347

MARCIA MARCHEL,

    Plaintiff,

-against-

MAGIC LEAP, INC.,

    Defendant.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, MARCIA MARCHEL ("**Plaintiff**" or "**Ms. Marchel**"), through her counsel, Derek Smith Law Group, PLLC, hereby complains of Defendant, MAGIC LEAP, INC. (referred to herein as "**Defendant**" or "**MAGIC**"), and allege as follows:

## NATURE OF THE CASE

1. This employment discrimination case is about an employer who subjected its employee to discrimination and retaliation, all culminating in the unlawful termination of the employee.

2. Plaintiff Marcia Marchel brings this action pursuant to the Americans with Disabilities Act of 1990 ("**ADA**") as amended, and The Age Discrimination in Employment Act of 1967 ("**ADEA**").

3. Ms. Marchel seeks monetary relief to redress Defendant's unlawful employment practices in violation of the ADA, and the ADEA. Additionally, this action seeks to redress Defendant's deprivation of Ms. Marchel's personal dignity and her civil right to pursue equal employment opportunities.

## PARTIES

4. At all times material, Plaintiff MARCIA MARCHEL (hereinafter referred to as "Plaintiff" or "MARCHEL") was and is an individual, disabled female who is a resident of the State of Florida, Miami-Dade County.

5. At all times material, Defendant MAGIC LEAP, INC. (hereinafter referred to as "Defendant" or "MAGIC") was and is a foreign for-profit business corporation authorized to do business in the State of Florida, with their principal place of business located at 7500 Sunrise Boulevard, Plantation, FL 33322.

6. At all times material, Defendant Magic was Ms. Marchel's employer.

7. At all times material, Rosa Sanchez (hereinafter referred to as "Sanchez") was employed by Defendant and held supervisory authority over Claimant with regard to her employment including but not limited to, the power to hire/fire, demote/promote, and discipline Claimant.

8. At all relevant times, Defendant Company, have been continuously doing business in the State of Florida and Miami-Dade County and has continuously held at least 20 employees for all relevant calendar years. *42 U.S.C. § 12111(5)(A); § 760.*

## JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367. This action is authorized and instituted pursuant to 42 U.S.C. § 1981.

10. Venue is proper in this Court under 28 U.S.C. §1391 because the unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Southern District of Florida, Miami Division.

## ADMINISTRATIVE PREREQUISITES

11. Plaintiff has complied with all statutory prerequisites in order to file this action.

12. All conditions precedent to bringing the within claims, including the exhaustion of administrative prerequisites, have been performed.

13. On or about May 22, 2020, Plaintiff Marchel timely dual filed a Charge of Discrimination and Retaliation with the Florida Commission on Human Relations ("FCHR"), Charge Number 202025440, and Equal Employment Opportunity Commission ("EEOC"), Charge Number 15D202000924, against Defendant Magic for unlawful employment practices.

14. On or about January 9, 2021, the EEOC Issued upon Plaintiff a Right to Sue Letter in reference to the above noted EEOC Charge.

15. Plaintiff filed this complaint within ninety (90) days of the issuance of the EEOC's Right to Sue Letter.

16. Furthermore, this action is being commenced more than one hundred eighty (180) days since the inception of Plaintiff's admirative action against the Defendants. To date no determination has been made by the FCHR relating to the below complaint.

## STATEMENT OF FACTS

17. On or about January 8, 2018, Defendant hired Plaintiff as a Quality Engineer Technician on a temporary basis.

18. At all times material, Plaintiff is an individual fifty-nine (59) year old woman.

19. At all times material, Plaintiff's responsibilities included, but were not limited to, creating Daily Cosmetic Issue Reports, investigating root causes of any quality issues and following investigative protocols to determine whether or not implementation of proper corrective

action was taken, visually inspecting eye pieces for quality failures in accordance with SOP to avoid defects in the field and reporting any quality defects.

20. On or about April 1, 2019, Defendant made Plaintiff's position permanent.

21. On or about June 14, 2019, Plaintiff was diagnosed with Fibromyalgia.

22. Fibromyalgia is a condition that causes widespread muscle pain and tenderness, and can also alter a person's sleep patterns, affect a person's memory, and alter their mood.

23. As a result of her diagnosis, Plaintiff was prescribed with Hydrochloroquine 200 MG (Plaquenil) in order to manage the symptoms of her debilitating condition.

24. Unfortunately, while the medication was a necessary course of action, the Plaquenil further had the effect of both impairing Plaintiff's vision as well as making it difficult for Plaintiff to sit for extended periods of time.

25. As a result of these side effects, Plaintiff contacted Defendant and began the process of requesting an accommodation. More specifically, Plaintiff requested a larger computer screen, to which Defendant obliged.

26. Although Plaintiff was provided with an accommodation, Plaintiff began to notice that her supervisor Sanchez's attitude towards her and her work became decidedly hostile.

27. By way of example, Sanchez expressly and unreasonably demanded that Plaintiff inspect a larger number of pieces than were being produced at the time and would berate her for not completing the impossible task.

28. Plaintiff's supervisor would also return Plaintiff's completed work and complain that it was not done properly.

29. At all times material, other of Defendant's younger employees without Plaintiff's health issues were not held to the same standard as Plaintiff.

30. Plaintiff's supervisor would often berate Plaintiff in front of her colleagues, causing Plaintiff extreme distress, anxiety and embarrassment.

31. The behavior of Defendant's supervisor caused Plaintiff's self-esteem to deteriorate and her health issues were exacerbated by the open hostility and disparate treatment.

32. Furthermore, Defendant committed to providing Plaintiff with a fifteen-minute break every two hours to accommodate her. However, Defendant never facilitated this accommodation, since they did not provide coverage that would enable Plaintiff to step away from her work and take those breaks.

33. Plaintiff requested a transfer to a different position that would not be so taxing on her aching body and diminishing eyesight and one that would distance her from Defendant's supervisor. Plaintiff brought her request to the attention of HR Manager Patricia Gonzalez, Director of Operation Frank Navarrette, Quality Manager Carl Rise, and QET Supervisor Rosa Sanchez.

34. Specifically, Plaintiff requested a position within the company that would allow her to move about rather than sit for long hours and allow her to rest her eyes when the strain became too great.

35. Despite the fact that such a position was available, Defendant denied Plaintiff the opportunity to take a lateral position.

36. At all times material, Plaintiff requested a meeting with Defendant's Human Resources Department to address the hostility, harassment and discrimination Defendant's supervisor had been subjecting Plaintiff to since requesting a reasonable accommodation.

37. At all times material, Defendant never granted Plaintiff a meeting with the Human Resources Department nor did they take any remedial action whatsoever.

38. As a result of Defendant's refusal to investigate or take any action whatsoever regarding Plaintiff's complaints, Plaintiff was left with no choice but leave her job with Defendant.

39. On or about October 25, 2019, Defendant wrongfully terminated Ms. Marchel. Defendant Magic unlawfully terminated Ms. Marchel because of her disability and associated requests for accommodation, her age and in retaliation for her complaints of unlawful discriminatory practices.

40. The aforementioned allegations are just some of the examples of the discrimination Ms. Marchel suffered. Additionally, Ms. Marchel claims a continuous practice of discrimination and continuing violations and makes all claims herein under the continuing violations doctrine.

41. As a result of the acts and conduct complained of, Ms. Marchel has suffered and will continue to suffer loss of income, loss of salary, bonuses, benefits, and other compensation which such employment entails. Ms. Marchel also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

42. Ms. Marchel suffers from increased stress and anxiety. Similarly, Ms. Marchel has trouble sleeping as a result of Defendants' conduct.

43. Further, as a result of Defendant's unlawful employment practices, Ms. Marchel felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

44. As Defendants' conduct has been malicious, willful, extreme and outrageous, and with full knowledge of the law, Ms. Marchel seeks punitive damages. Ms. Marchel has presented factual allegations that would permit any reasonable jury to award damages.

45. At bottom, Defendant is liable for their reckless disregard for Ms. Marchel's personal dignity and her civil right to pursue equal employment opportunity.

46. Ms. Marchel has suffered damages as a result of Defendant's unlawful employment practices.

## COUNT I
### *Disability Discrimination (Disparate Treatment) in Violation of the ADA*

47. Plaintiff realleges the allegations in all previous paragraphs contained herein.

48. Plaintiff claims Defendant MAGIC LEAP, INC. violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

49. SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

50. Plaintiff is a disabled individual because she suffers from Fibromyalgia. This disability affects major life activities including widespread muscle pain and tenderness, altered sleep patterns, memory, and mood. Furthermore, the medication that Plaintiff takes to manage her disability has the effect of impairing Plaintiff's vision and making it difficult for her to sit for extended periods of time.

51. Plaintiff is a qualified individual because Plaintiff was fully capable of performing the essential functions of her job with the aforementioned accommodations.

52. Defendant MAGIC LEAP, INC. violated the section cited herein by creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of Plaintiff's disability.

53. Once Plaintiff requested the accommodation for her disability, her supervisor, Sanchez, began treating her differently than she had previously and differently from how she treated other employees (who upon information and belief did not have a stated disability or request an accommodation). For example, Sanchez would unjustifiably berate Plaintiff's work, assign her unreasonable tasks, and impose heightened standards on Plaintiff's work to which Sanchez did not hold other, non-disabled employees.

54. Plaintiff complained to HR and even requested another position to avoid the disparate and discriminatory treatment. However, Defendant did nothing to remedy the stop the discriminatory treatment.

55. Defendant MAGIC LEAP, INC. violated the above and Plaintiff suffered numerous damages as a result.

56. Defendant's alleged basis for its adverse and disparate treatment of Plaintiff are pretextual and asserted only to cover up the discriminatory nature of Defendant's conduct.

57. Even if Defendant could assert legitimate reasons for its adverse and disparate treatment of Plaintiff, which reasons Defendant's does not have, Plaintiff's disability was the motivating factor in the adverse and disparate treatment to which she was subjected.

58. As a result of Defendant's intentional discriminatory conduct Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff

accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

59. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiffs rights under the ADA. Accordingly, Plaintiff also requests punitive damages as authorized by the ADA.

60. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT II
*Disability Discrimination (Failure to Accommodate)*
*in Violation of the ADA 42 U.S.C. § 12112(a)*

61. Plaintiff realleges the allegations in all previous paragraphs contained herein.

62. SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

63. Section § 12112 (b) further provides:

> As used in subsection (a), the term "discriminate against a qualified individual on the basis of disability" includes—
>
> …
>
> (5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee…

64. Plaintiff requested an accommodation for a fifteen-minute break every two hours to walk around, as her condition made it difficult for her to sit for extended periods of time. However, Defendant failed to provide this accommodation.

65. Defendant also failed to move Plaintiff to a vacant position to accommodate Plaintiff's disability and prevent the continued discrimination; instead, Defendant terminated Plaintiff's employment in retaliation for complaining and requesting a reasonable accommodation.

66. As a result of Defendants' failure to accommodate Plaintiff in violation of 42 U.S.C. section 12112(a), Plaintiff has suffered damages.

## COUNT III
### *Retaliation in Violation of the ADA 42 U.S.C. § 12203(a)*

67. Plaintiff realleges the allegations in all previous paragraphs contained herein.

68. SEC. 12203. [Section 503] states:

    (a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

69. Defendant violated the section cited herein by retaliating against Plaintiff for requesting an accommodation for her disability.

70. Defendant treated Plaintiff with hostility because she had complained and requested a reasonable accommodation.

71. As described above, Plaintiff engaged in protected activity by requesting a reasonable accommodation for a larger computer monitor and allowance to take short breaks after few hours. Though Defendant did provide a larger monitor, they failed to accommodate

Plaintiff's request for intermittent breaks by not assigning someone who could cover her responsibilities during those times. Defendant's failure to accommodate Plaintiff's request constitutes retaliation because of her disability.

72. Defendant also failed to move Plaintiff to a vacant position to accommodate Plaintiff's disability and prevent the continued discrimination; instead, Defendant terminated Plaintiff's employment in retaliation for complaining and requesting a reasonable accommodation.

73. Defendant Magic violated the above and Plaintiff suffered numerous damages as a result.

## COUNT IV
### *Age Discrimination (Disparate Treatment) in Violation of ADEA*

74. Plaintiff realleges the allegations in all previous paragraphs contained herein.

75. The Age Discrimination in Employment Act of 1967, 29. U.S.C. 623 (a) provides in pertinent part that:

> It shall be unlawful for an employer– (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

76. At all material times, Ms. Marchel was an employee and Defendant Magic was her employer covered by and within the meaning of the ADEA.

77. The exact number of employees at the above entity is unknown, but upon information and belief, there are well more than the statutory minimum.

78. Ms. Marchel is a member of the protected age class (over the age of 40).

79. Ms. Marchel was well qualified for the position that she held with Defendant Magic.

80. Despite her qualifications, Defendant discriminated against Ms. Marchel throughout the course of her employment and ultimately by unlawfully terminating her because of her age.

81. For example, Sanchez would unjustifiably berate Plaintiff's work, assign her unreasonable tasks, and impose heightened standards on Plaintiff's work to which Sanchez did not hold younger employees.

82. Upon information and belief, a younger person under the age of 40 with inferior qualifications replaced Ms. Marchel.

83. Defendant has discriminated against Ms. Marchel in the terms and conditions of her employment on the basis of her age, in violation of the ADEA.

84. The Defendant engaged in unlawful employment practices in violation of the ADEA by terminating Ms. Marchel because of her age.

85. The Defendant's violations of the law were knowing and willful.

86. A causal connection exists between Ms. Marchel's age and the termination of her employment by the Defendant.

87. As a result of the above-described violations of the ADEA, Ms. Marchel has been damaged by the Defendant in the nature of lost wages, salary, employment benefits, mental/emotional damages and other compensation and is therefore entitled to recover actual monetary losses, interest at the prevailing rate and attorney fees.

## COUNT V
### *Retaliation in Violation of the ADEA*

88. Plaintiff realleges the allegations in all previous paragraphs contained herein.

89. The Age Discrimination in Employment Act of 1967, 29. U.S.C. 623 (d) provides in pertinent part that:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

90. At all material times, Ms. Marchel was an employee and Defendant Magic was her employer covered by and within the meaning of the ADEA.

91. The exact number of employees at the above entity is unknown, but upon information and belief, there are well more than the statutory minimum.

92. Ms. Marchel is a member of the protected age class (over the age of 40).

93. Following Ms. Marchel's objections to Defendant's discriminatory treatment because of her age, Defendant retaliated by altering the terms and conditions of Ms. Marchel's employment and terminating her employment.

94. Ms. Marchel had complained to Defendant about what was age discrimination and Defendant clearly observed Ms. Marchel's growing discomfort concerning the same.

95. Ms. Marchel's complaints constitute a protected activity because her complaints were concerning an unlawful activity of the Defendant.

96. Said protected activity was the proximate cause of the Defendant's negative employment actions against Ms. Marchel including changed working conditions, disparate treatment, and termination.

97. Instead of investigating Ms. Marchel's complaints and objections of what was age discrimination, Defendant retaliated against Ms. Marchel via changed working conditions, disparate treatment, and termination.

98. The acts, failures to act, practices and policies of Defendant set forth above constitute retaliation in violation of the ADEA.

99. As a direct and proximate result of the violations of the ADEA, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, Ms. Marchel is entitled to all relief necessary to make him whole as provided for under the ADEA.

100. As a direct and proximate result of Defendant's actions, Ms. Marchel has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

## JURY DEMAND

101. Plaintiff hereby demands a trial by jury on all issues triable before a jury.

## PRAYER FOR RELIEF

WHEREAS, Plaintiff prays for the following relief against Defendant:

A declaration that Defendant violated Plaintiff's federal, state and city civil rights;

Compensatory damages for injuries suffered by Plaintiff by reason of Defendant's unlawful and unjust conduct, in an amount just and reasonable an in conformity with the evidence at trial in an amount to be determined at trial;

Punitive damages against Defendant assessed to deter such intentional and reckless deviation from well-settled standard to the extent allowable by law;

Damages for emotional distress, physical injury, lost wages, back pay, front pay, statutory damages, medical expense, interest and any other compensatory damages as permitted by law and according to proof at trial;

Award of Plaintiff's reasonable attorney's fees and costs under all applicable laws; and

Such other and further relief as appears just a proper.

Dated: Miami, Florida
April 7, 2021

**DEREK SMITH LAW GROUP, PLLC**

/s/ Meir Weiss_____
Meir D. Weiss, Esq.
Fla. Bar. No.: 1022288
meir@dereksmithlaw.com
701 Brickell Avenue, Suite 1310
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741
*Attorneys for Plaintiff*